<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>      Plaintiff,<br><br>v.<br><br>HARLEYSVILLE INSURANCE COMPANY,<br><br>      Defendant. | Civil Action No. 21-7669 (SDW) (JRA)<br><br>**OPINION**<br><br>July 20, 2022 |

**WIGENTON**, District Judge.

  Before this Court is Plaintiff Liberty Mutual Fire Insurance Company's ("Liberty Mutual") Motion to Dismiss Defendant Harleysville Insurance Company's ("Harleysville") Counterclaims for failure to state a claim pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6). (D.E. 30.) Also before this Court is Harleysville's Motion for Leave to File a Third-Party Complaint against non-party Liberty Construction Services, LLC ("LCS"). (D.E. 29.) Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1332 and 1391, respectively. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the parties' motions are **DENIED**.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

  This litigation between two insurance companies involves multiple insureds and arises from a tort action filed in state court against the insureds. On December 20, 2018, Richard Lipowski ("Lipowski"), an LCS employee, filed the underlying suit in the Superior Court of New Jersey, asserting claims for injuries he suffered on November 15, 2017, while working on a construction site (the "Project") in Jersey City, New Jersey. (*See* D.E. 1 ("Compl.") ¶¶ 7–8); *Lipowski v. Noble Constr. Grp., LLC*, No. HUD-L-5029-18 (N.J. Super. Ct. Law Div. filed Dec.

20, 2018) (the "Underlying Action").[1,2]  Lipowski asserts claims against several entities responsible for the Project: Suffolk Construction Group, LLC ("Suffolk"), Forest City Ratner Companies, LLC ("Forest City"), G&S Investors/Jersey City L.P. ("G&S"), and Noble Construction Group, LLC ("Noble").  (*See* Compl. ¶¶ 8–9.)  Liberty Mutual is providing coverage to Suffolk, Forest City, and G&S (collectively, the "LM Insureds") in the Underlying Action, under a policy that Liberty Mutual issued to LCS.  (*See id.* ¶¶ 23–24.)  Harleysville is providing coverage to Noble in the Underlying Action, under a policy that it issued to Noble.  (*See id.* ¶ 13.)

Liberty Mutual filed the instant suit in this Court on March 31, 2021.  (D.E. 1.)  Liberty Mutual alleges that Harleysville owes coverage in the Underlying Action to the LM Insureds, as additional insureds under the policy that Harleysville issued to Noble.  (*See* Compl. ¶¶ 35–43.)[3]  On December 16, 2021, Harleysville filed an Amended Answer denying that it owes additional coverage to the LM Insureds.  (*See* D.E. 28 at 6–7 ¶¶ 35–43.)  However, if this Court finds that Harleysville owes coverage, Harleysville will seek to assert a contingent subrogation claim for contractual indemnity against LCS, on the basis that LCS agreed to indemnify the LM Insureds.  (*See* D.E. 29-2 at 1.)  Accordingly, before this Court is Harleysville's Motion for Leave to File a Third-Party Complaint against LCS, which the parties timely briefed.  (D.E. 29, 31, 36.)

With its Amended Answer, Harleysville also asserts counterclaims against Liberty Mutual, alleging that Liberty Mutual owes coverage to Noble in the Underlying Action as an additional insured, under a policy that Liberty Mutual issued to Suffolk.  (*See* D.E. 28 at 11–14 ¶¶ 1–21.)  Liberty Mutual filed a Motion to Dismiss the Counterclaims, and the parties timely completed

---

[1] Lipowski's spouse is also a plaintiff in the Underlying Action.  (*See* Compl. ¶ 7.)

[2] Trial is currently scheduled to commence in the Underlying Action on September 12, 2022.  (*See* D.E. 48 at 2.)

[3] Forest City and G&S were dismissed from the Underlying Action in May 2021, but Liberty Mutual seeks to recover past defense costs from Harleysville as well.  (*See* D.E. 29-9 (state trial court orders); Compl. ¶¶ 41–43.)

2

briefing on that motion as well. (D.E. 30, 38, 42.) This Court decides both motions in the discussion below.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the

complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

**B.      Rule 14**

Motions for leave to file a third-party complaint impleading new parties are governed by Rule 14, which provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Such party "must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer." *Id.* "The purpose of Rule 14(a) is to avoid circuity of action and multiplicity of litigation." *Spencer v. Cannon Equip. Co.*, Civ. No. 07–2437, 2009 WL 1883929, at *2 (D.N.J. June 29, 2009) (citing cases). "A third-party plaintiff's claim must present a theory upon which the third-party defendant can be liable to the third-party plaintiff under some theory of secondary liability, i.e., indemnification, contribution, or some other theory of derivative liability recognized by relevant substantive law." *Meehan v. Bath Auth., LLC*, Civ. No. 18-17444, 2021 WL 130483, at *1 (Jan. 14, 2021) (quoting *Ronson v. Talesnick*, 33 F. Supp. 2d 347, 356 (D.N.J. 1999)).

"[J]oinder of third-party defendants under Rule 14 is not automatic; rather, the decision to permit joinder rests with the sound discretion of the trial court." *Spencer*, 2009 WL 1883929, at *2 (quoting *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 748 F. Supp. 1057, 1068 (D. Del. 1990)). Relevant factors include "(1) the timeliness of the motion; (2) the probability of trial delay; (3) the potential for complication of issues at trial; and (4) prejudice to the original plaintiff." *Id.* (quoting *Ronson*, 33 F. Supp. 2d at 356). "Courts may also invoke a futility analysis in a Rule 14 motion." *Aguirre v. Bergen Marble & Granite, Inc.*, Civ. No. 20-7476, 2021 WL 5918473, at *2 (D.N.J. Dec. 14, 2021) (citing *Wilson v. Beekman*, 198 F. App'x 239, 242 (3d Cir. 2006)).

### III. DISCUSSION

#### A. Motion to Dismiss Counterclaims

Harleysville's counterclaims seek coverage for Harleysville's named insured, Noble, under a policy that Liberty Mutual issued to Suffolk. (*See* D.E. 28 at 11–14 ¶¶ 1–21.) That policy provides coverage to "additional insured person(s) or organization(s)" as "per written contract or agreement." (D.E. 38-8 at 96 (capitalization omitted).) On September 1, 2015, Suffolk and Noble entered into a construction contract in which Noble agreed to provide construction management consulting services to Suffolk, the general contractor on the Project. (D.E. 30-5 (the "Construction Contract" or "Agreement").)[4] The Construction Contract contains the following provision:

> [Suffolk] shall provide in the policy of comprehensive general liability insurance required by this Agreement, a contractual indemnity endorsement which insures [Suffolk's] liability under the provisions of this Section and name [Noble] as an additional insured on ISO forms CG 2010 0704 and CG 2037 0704.

(Construction Contract ¶ 4(b).) In view of this written contract between Suffolk and Noble, Harleysville claims that Liberty Mutual must provide coverage to Noble as an additional insured. (*See* D.E. 28 at 11–14 ¶¶ 1–21.)

In moving to dismiss the counterclaims, Liberty Mutual argues that ¶ 4(b)'s requirement that Suffolk obtain certain coverage for Noble "in the policy of comprehensive general liability insurance *required by this Agreement*," (emphasis added), is unavailing to Harleysville because the Construction Contract does not otherwise require Suffolk to obtain any insurance coverage for Noble. (*See* D.E. 30-1 at 6–9; D.E. 42 at 1–3.) Elsewhere, the Construction Contract contains a mirror provision requiring Noble to "provide in the policy of comprehensive general liability insurance required by this Agreement a contractual indemnity endorsement which insures

---

[4] The parties agree that the Construction Contract is valid and governed by New Jersey law. (*See* D.E. 30-1 at 6; D.E. 38 at 7; D.E. 42 at 3.)

[Noble's] liability under the provisions of this Section and name [Suffolk] as an additional insured . . . ." (Construction Contract ¶ 4(a).)  This provision is followed by additional terms requiring Noble to (1) obtain and pay for general liability and excess umbrella liability insurance, with limits no less than $1 million per occurrence and $2 million in the aggregate; and (2) name Suffolk, the owner of the Project, and any other interested party as additional insureds on a "primary, non-contributory basis" on the liability insurance policies that Noble is required to obtain. (Construction Contract ¶ 5.)  Notably, the Construction Contract does not contain any such additional terms obligating Suffolk to do the same.  Liberty Mutual argues that the absence of any essential terms with respect to Suffolk's insurance obligations, including dollar amounts and the priority of additional insureds, makes clear that the Construction Contract imposes insurance obligations only on Noble, and not on Suffolk. (*See* D.E. 42 at 4–5.)

While Liberty Mutual's reading of the Construction Contract is persuasive, its interpretation would render ¶ 4(b) meaningless.  It would also violate the provision's plain language requirement that "[Suffolk] shall . . . name [Noble] as an additional insured on ISO forms CG 2010 0704 and CG 2037 0704." (Construction Contract ¶ 4(b).)[5]  At the very least, the Construction Contract is ambiguous and "susceptible to at least two reasonable alternative interpretations." *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 774 (D.N.J. 1999) (quotation omitted).  When a contract is ambiguous, courts deny motions to dismiss so that the parties may obtain discovery in an effort to resolve the ambiguity. *See, e.g.*, *id.* at 775; *Gould v. Great-W. Life & Annuity Ins. Co.*, 959 F. Supp. 214, 220–21 (D.N.J. 1997); *Klein v. Budget Rent*

---

[5] If Suffolk was only required to "name [Noble] as an additional insured" as otherwise "required by this Agreement," then the grammatically appropriate word choice in the provision would have been "names" and not "name." (*See* Construction Contract ¶ 4(b).)

6

*a Car Sys., Inc.*, Civ. No. 12-7300, 2013 WL 1760557, at *6 (D.N.J. Apr. 24, 2013).[6]  This Court will do the same and deny Liberty Mutual's motion to dismiss Harleysville's counterclaims.

        **B.**        **Motion for Leave to File a Third-Party Complaint**

In moving for leave to file a third-party complaint, Harleysville contends that if it is found to owe coverage to the three LM Insureds, then it has the right to step into their shoes and assert a subrogation claim against LCS to recover defense costs and indemnity payments.  (*See* D.E. 29-2 at 6.)[7]  Subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities."  *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 326 (D.N.J. 2013) (quotation omitted).  It is often used in the insurance context, where an insurer who indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a liable third party.  *See id.*  After paying a claim to the insured, the insurer may obtain reimbursement from the liable party.  *See id.*  However, the insurer is "limited to the rights available to the insured, and is likewise subject to all defenses that could have been asserted directly against the insured."  *Id.* (citation omitted).  For example, courts have found that a subrogee can be compelled to arbitrate claims pursuant to a contract between the subrogor and the liable party.  *See, e.g.*, *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (compelling arbitration against non-signatory insurance underwriter because "[i]t is clearly established that an insurer-subrogee stands in the shoes of its insured" (quotation omitted)).

---

[6] In fact, the parties have already engaged in some discovery, and some of the documents produced suggest that both Suffolk and Noble intended for Noble to receive additional insured coverage under the policy that Liberty Mutual issued to Suffolk. (*See* D.E. 51.)

[7] Harleysville states in its policy to Noble, "If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us." (D.E. 29-10 at 22 ¶ 8.)

Harleysville's proposed claim is based on a June 20, 2016, subcontract between Suffolk and LCS for the Project. (*See* D.E. 29-1 (Proposed Third-Party Complaint) ¶ 12; D.E. 29-6 and -7 (the "Subcontract").) Per the Subcontract, LCS agreed to indemnify the LM Insureds for liability arising out of LCS's work, which includes any liability in the Underlying Action for injuries to Lipowski, an LCS employee. (*See* Subcontract ¶ 8.8.) At issue here, the Subcontract contains a "RIDER FOR NEW JERSEY PROJECTS" that states, in relevant part:

> This Rider supplements, supersedes and amends the terms and conditions of the Subcontract, Purchase Order or other Agreement. To the extent that there are any conflicts or ambiguities between the provisions of this Rider and the terms and conditions of the Subcontract, Purchase Order or other Agreement, the provisions of this Rider shall prevail.

(D.E. 29-6 at 2 ("Rider").) Notably, the Rider contains an arbitration clause:

> THE AGREEMENT TO ARBITRATE HEREIN INVOLVES A WAIVER OF ANY CONSTITUTIONAL OR STATUTORY RIGHT TO HAVE CLAIMS AND/OR DEFENSES LITIGATED IN COURT. ARBITRATION SHALL BE THE EXCLUSIVE REMEDY FOR ANY AND ALL DISPUTES. THE PARTIES UNDERSTAND THAT ALL DISPUTES SHALL BE DECIDED BY ARBITRATION AND THAT PARTIES HEREBY WAIVE THE RIGHT TO ANY OTHER AVAILABLE RESOLUTION PROCESSES, INCLUDING COURT ACTION, AND ANY RIGHT TO A JURY TRIAL, OR ADMINISTRATIVE PROCEEDINGS.

(*Id.*)

Notwithstanding this clear mandatory arbitration provision, Harleysville argues that it is entitled to litigate any subrogation claims against LCS in this Court. (*See* D.E. 29-2 at 9–10; D.E. 36 at 1–6.) Harleysville primarily argues that the arbitration clause is ambiguous and should not be enforced at the pleading stage. (*See* D.E. 36 at 1–6.) Specifically, Harleysville points to ¶ 8.16 of the Subcontract, which only mandates arbitration for claims under $50,000, and allows arbitration at Suffolk's election (*i.e.*, Harleysville's election in a subrogation action) for claims above $50,000. (*See* D.E. 36 at 3–5 (citing Subcontract ¶ 8.16).) According to Harleysville, the

8

disputed Rider may only apply to claims under $50,000, and does not apply to its claim, which is above that threshold. (*Id.*)

Harleysville's interpretation is not plausible under the plain language of the Rider, which "supplements, supersedes and amends the terms and conditions of the Subcontract" and "shall prevail" "[t]o the extent that there are any conflicts or ambiguities between the provisions of this Rider and the terms and conditions of the Subcontract." (Rider.) Harleysville suggests that the arbitration provision is not "'sufficiently clear' to put each party on notice that it 'is waiving a constitutional or statutory right.'" (D.E. 36 at 2 (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 443 (2014)).) However, this Court strains to envision a provision that is clearer than "THE PARTIES UNDERSTAND THAT ALL DISPUTES SHALL BE DECIDED BY ARBITRATION AND THAT PARTIES HEREBY WAIVE THE RIGHT TO ANY OTHER AVAILABLE RESOLUTION PROCESSES, INCLUDING COURT ACTION . . . ." (Rider.)

The Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "[T]here is a strong presumption in favor of arbitration, and doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007) (quotation omitted). "An order to arbitrate 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Medtronic AVE Inc. v. Advanced Cardiovascular Sys. Inc.*, 247 F.3d 44, 55 (3d Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960)). The Rider's arbitration clause clearly covers any dispute between Suffolk and LCS related to the

Project, and if Harleysville steps into Suffolk's shoes, then Harleysville will be required to arbitrate. Harleysville's motion for leave to file a third-party complaint against LCS will therefore be denied as futile.

## IV. CONCLUSION

For the reasons discussed above, the parties' motions are **DENIED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:         José R. Almonte, U.S.M.J.
            Parties